IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATRICK O. DUGAN,

      Plaintiff,

vs.                                                    Civ. No. 09-605 JP/KBM

DEPARTMENT OF PUBLIC SAFETY
of the State of New Mexico; AUBONY
BURNS, an Agent with the Department
of Public Safety/Special Investigations
Division; and JOEL LUCHETTI, an Agent
with the Department of Public Safety/Special
Investigations Division,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

On March 1, 2010, Plaintiff filed a Motion for Stay Pursuant to the Servicemembers

Civil Relief Act (Doc. No. 30)(Motion for Stay).[1]  Having reviewed the briefs and relevant law,

the Court concludes that the Motion for Stay should be granted and that Plaintiff's in-person

deposition and any other personal appearance in this lawsuit should be stayed until June 22,

2010.

*A.  Background*

    *1.  Procedural History*

    a.  On April 7, 2009, Plaintiff filed a Complaint for Civil Rights Violations (Doc. No.

11)(Complaint) in state court.

    b.  Defendants subsequently removed the Complaint to federal district court on June 19,

2009.  Notice of Removal to the United States District Court for the District of New Mexico

---

    [1]The Servicemembers Civil Relief Act (SCRA) was previously known as the Soldiers'
and Sailors' Civil Relief Act of 1940.

(Doc. No. 1).

     c. Plaintiff, a United States Air Force pilot, was deployed to Afghanistan on August 25, 2009 for a 108 day tour of duty.  Ex. 2 (attached to Plaintiff's Reply to Defendants' Response (Doc 34) to Plaintiff's Motion for Stay Pursuant to the Servicemembers Civil Relief Act (Doc. 30), (Doc. No. 36)(Reply), filed April 1, 2010).

     d. On September 4, 2009, the Honorable United States Magistrate Judge Karen B. Molzen held a Fed. R. Civ. P. 16 initial scheduling conference and entered a Scheduling Order (Doc. No. 15).

     e. On October 27, 2009, Defendants' counsel asked Plaintiff's counsel via email "to take the plaintiff's deposition and that of his witnesses as soon as possible."  Ex. A (attached to Defendants' Response to Plaintiff's Motion for Stay Pursuant to the Servicemembers' [sic] Civil Relief Act (Doc. No. 34) (Response), filed March 15, 2010).

     f. On November 17, 2009, Judge Molzen held a telephonic status conference in which Plaintiff's counsel informed Judge Molzen that Plaintiff was in Afghanistan but would be back in the State of Georgia on December 11, 2009.  Clerk's Minutes (Doc. No. 21), filed Nov. 19, 2009.  Plaintiff's counsel also informed Judge Molzen that once Plaintiff was back in the United States she would report to Judge Molzen on whether Plaintiff wanted to continue to prosecute the lawsuit.  *Id.*  Judge Molzen indicated that she would set a follow-up status conference on December 15, 2009.  *Id.*  Judge Molzen later changed the date of the follow-up status conference to December 14, 2009.  Docket Entry dated Dec. 2, 2009.

     g. Although the Plaintiff was in Afghanistan in November 2009 and the beginning of December 2009, Plaintiff nonetheless served Defendants on November 25, 2009 with his answers and responses to Defendants' first set of discovery; and on December 3, 2009, Plaintiff

2

served Defendants his first set of written discovery. Certificate of Service (Doc. No. 23);

Certificate of Service (Doc. No. 24).

 h. Also, on December 3, 2009, Plaintiff's counsel stated to Defendants' counsel that she

"hope[d] to set deposition dates for Defendants Burns and Luchetti sometime within the next 30

days...." Ex. 1 (attached to Reply).  Plaintiff's counsel further noted that witness Luke Lefever

was on leave and available for deposition.  *Id*.  Finally, Plaintiff's counsel stated that she would

contact Defendants' counsel "soon after December 7, 2009 to confirm whether [her] client had

indeed made it back to U.S. soil." *Id*.

 i. On December 14, 2009, Judge Molzen held a follow-up telephonic status conference.

Clerk's Minutes (Doc. No. 25), filed Dec. 14, 2009.  Plaintiff's counsel indicated during the

telephonic status conference that Plaintiff was back in Georgia, and that counsel would submit to

Judge Molzen a second proposed scheduling order.  *Id*.  Judge Molzen set another telephonic

status conference on January 20, 2010.  *Id*.

 j. On December 16, 2009, Defendants' counsel wrote a letter to Plaintiff's counsel

requesting to depose Plaintiff.  Ex. B (attached to Response).

 k. In late December, Plaintiff's counsel attempted to coordinate a date for Plaintiff's

deposition but was later informed by Defendants' counsel that previous available dates were "no

longer good."   Affidavit, Ex. 7 (attached to Reply).

 l. The parties notified Judge Molzen at the January 20, 2010 telephonic status conference

that they were "very close to reaching a negotiated resolution...."  Clerk's Minutes (Doc. No.

28), filed Jan. 20, 2010.

 m. On February 3, 2010, the parties informed Judge Molzen that they could not settle the

case.  Exs. D and E (attached to Response).

n. Also, on February 3, 2010, Defendants' counsel again asked Plaintiff's counsel via email when she could take Plaintiff's deposition. Ex. E (attached to Response).

o. On February 25, 2010, Defendants' counsel informed Judge Molzen that Plaintiff intended to pursue the litigation and that Plaintiff was once more deployed outside of the United States. Ex. F (attached to Response). Defendants' counsel then asked Judge Molzen to hold another Rule 16 initial scheduling conference. *Id*. Defendants' counsel further noted to Judge Molzen that had she "known [Plaintiff] intended to pursue the litigation [she] would have insisted on his appearance for deposition before he left." *Id*.

p. On March 1, 2010, the Plaintiff filed the Motion for a Stay.

q. The next day, on March 2, 2010, Judge Molzen held a second Rule 16 initial scheduling conference and entered another Scheduling Order (Doc. No. 32). The second Scheduling Order set forth the following deadlines: discovery is to be completed by July 2, 2010; discovery motions are to be filed by July 9, 2010; Plaintiff is to disclose expert witnesses by April 2, 2010; Defendants are to disclose expert witnesses by May 3, 2010; pretrial motions other than discovery motions are to be filed by August 13, 2010; and the final pretrial order is due to the Court on October 18, 2010. *Id*.

r. On March 15, 2010, Plaintiff's counsel asked Defendant's counsel to provide a list of dates and times for the depositions of the individual Defendants. Ex. 6 (attached to Reply).

s. On March 18, 2010, Plaintiff's counsel informed Defendants' counsel that Lt. Jeremy Powell will be available for a deposition in Washington, D.C. on several days in May 2010 and that she had cleared her schedule to be available for that deposition. Ex. 4 (attached to Reply).

t. On March 19, 2010, Plaintiff served Defendants with supplemental answers to their first set of interrogatories. Certification of Service (Doc. No. 35).

4

u.  On April 1, 2010, Plaintiff served Defendants with supplemental Fed. R. Civ. P. 26

disclosures.  Certificate of Service (Doc. No. 37).

2.  *Documentation in Support of the Motion for Stay*

On February 18, 2010, the 23 Force Support Squadron of the Air Force, based in

Georgia, issued Special Order TE-0324 which indicated that Plaintiff was to deploy to Iraq on

February 27, 2010 for 101 days.  Attached to Motion for Stay.  On February 26, 2010, Plaintiff's

Flight Commander wrote a letter to Plaintiff's counsel stating that Plaintiff would be unavailable

for a deposition until June 22, 2010.  Attached to Motion for Stay.  Plaintiff's Flight Commander

subsequently wrote another letter to Plaintiff's counsel on March 23, 2010 in which he stated

that "[d]ue to seven day a week, 14 hour a day scheduling Captain Dugan will be unable to take

leave or depart for any reason other than emergency family needs while deployed to the Iraqi

area of operations within the above stated time period [February 23 to June 22, 2010]."  Ex. 8

(attached to Reply).

B.  *Discussion*

Plaintiff moves under the SCRA to stay the taking of Plaintiff's in-person deposition and

any other personal appearance in this lawsuit for a total of 115 days.  Specifically, Plaintiff seeks

a 90 day stay under 50 App. U.S.C. §522(b) and an additional 25 day stay under §522(d)(1).

Defendants oppose the Motion for Stay because Plaintiff has not submitted all of the supporting

documentation required by §522(b)(2) and because they believe Plaintiff is manipulating the

SCRA to gain a procedural advantage over them.

The purpose of the SCRA is to "strengthen[] and expedite the national defense" by

enabling servicemembers "to devote their entire energy to the defense needs of the Nation...."

50 App. U.S.C. §502(1).  To fulfill that purpose, the SCRA "provide[s] for the temporary

suspension of judicial and administrative proceedings and transactions that may adversely affect

the civil rights of servicemembers during their military service." *Id*. at §502(2). Consequently,

"the SCRA must be construed to prevent any disadvantage to a servicemember litigant resulting

from his or her military service" and "must be 'liberally construed to protect those who have

been obliged to drop their own affairs to take up the burdens of the nation.'" *George P. v.*

*Superior Court*, 24 Cal. Rptr.3d 919, 924 (Cal. Ct. App. 2005)(quoting *Boone v. Lightner*, 319

U.S. 561, 575 (1943)). The SCRA, however, is not to be used as sword in order to give

servicemembers "an unwarranted advantage over civilian litigants." *Id*. at 925.

Section 522(b)(1) states, in pertinent part, that the court "shall, upon application by the

servicemember, stay the action for a period of not less than 90 days, if the conditions in

paragraph (2) are met." Paragraph (2) of §522(b) requires that an application for a stay include

the following documentation:

> (A) A letter or other communication setting forth facts stating the manner in which
> current military duty requirements materially affect the servicemember's ability to appear
> and stating a date when the servicemember will be available to appear.

> (B) A letter or other communication from the servicemember's commanding officer
> stating that the servicemember's current military duty prevents appearance and that
> military leave is not authorized for the servicemember at the time of the letter.

Section 522(b) "sharply restricts the court's discretion with respect to granting or denying the

initial 90-day stay. The stay is required whenever there is a showing of how military duty

materially affects a servicemember's ability to appear in the action supported by a letter from the

servicemember's commanding officer." *George P.*, 24 Cal. Rptr.3d at 924. A trial court,

however, is not required to grant a request for stay if the servicemember has not met the

documentary requirements set forth in §522(b)(2). *See, e.g., Teas v. Ferguson*, 2007 WL

4106290 *1 (W.D. Ark.); *Westfall v. Westfall*, 2008 WL 1747626 *2-3 (Minn. Ct. App.); *In re*

*Walter*, 234 S.W.3d 836, 837 (Tex. App. 2007); *Jones v. Van Horn*, 640 S.E.2d 712, 715-16 (Ga. Ct. App. 2006).

> Section 522(d)(1) provides that:
>
> A servicemember who is granted a stay of a civil action or proceeding under subsection (b) may apply for an additional stay based on continuing material affect of military duty on the servicemember's ability to appear.  Such an application may be made by the servicemember at the time of the initial application under subsection (b) or when it appears that the servicemember is unavailable to prosecute or defend the action.  The same information required under subsection (b)(2) shall be included in an application under this subsection.

Unlike the mandatory nature of an initial 90 day stay under §522(b), an additional stay under §522(d)(1) is discretionary in nature.  *George P.*, 24 Cal. Rptr.3d at 924.

The Defendants oppose the Motion for Stay for three reasons.  First, Defendants observe that Plaintiff did not comply with §522(b)(2) because he did not produce a letter or other communication from his commanding officer stating "that military leave is not authorized for the servicemember at the time of the letter."  Second, Defendants contend that Plaintiff did not show that he attempted to seek military leave in order to prosecute this lawsuit.  Third, Defendants argue that Plaintiff is using the SCRA as a sword because Plaintiff's physical unavailability and general lack of diligence in pursuing this lawsuit constitute an effort by Plaintiff "to gain a tactical advantage over Defendants and to defeat an orderly and expeditious trial."  Response at unnumbered pg. 6.

The Plaintiff attached to his Reply a letter from his Flight Commander indicating that while Plaintiff is deployed to Iraq, he cannot take military leave from February 23 to June 22, 2010 unless there is a family emergency.  This letter along with the other documentation regarding Plaintiff's deployment to Iraq meet the documentation requirements of §522(b)(2).  Consequently, the Court is obliged to grant the initial 90 day stay.  Moreover, the Court, in its

7

discretion, will grant an additional stay under §522(d)(1) due to the length of Plaintiff's deployment in a foreign country, thereby staying Plaintiff's in-person deposition and any personal appearance in this lawsuit until June 22, 2010.

The Court further rejects Defendants' argument that Plaintiff is using the SCRA as a sword.  Although Plaintiff was physically unavailable from the latter part of August 2009 through mid-December 2009, and will be physically unavailable from late February 2010 until late June 22, 2010,  Plaintiff, nonetheless, tried to coordinate a deposition date in late December 2009 and has been willing to be available for a deposition by teleconference.  Plaintiff is also willing to be deposed by written questions.  *See* Fed. R. Civ. P. 31.  Furthermore, although the Plaintiff was slow to engage in discovery at the beginning of the litigation, he has engaged in discovery since late November 2009 until the present.  In addition, Plaintiff participated in settle negotiations in an effort to amicably resolve the litigation.  More importantly, though, Defendants have failed to show how they will be improperly prejudiced or harmed if the Motion for Stay is granted.  Mere delay of litigation due to a stay under the SCRA is insufficient to demonstrate that the SCRA in being used as a "sword."  "As courts have held, under the SCRA, '[t]he possibility of detriment to parties who are not in the military service is not a controlling factor to be considered in passing upon a motion for a stay of proceedings[.]'"  *Keane v. McCullen*, ___ F.Supp.2d ___, 2009 WL 331455 *3 (N.D. Cal.)(quoting *Cont'l Ill. Nat. Bank & Trust Co. v. Univ. of Notre Dame Du Lac*, 69 N.E.2d 301, 305 (1946)).  Except for a delay in taking Plaintiff's in-person deposition, the parties can continue to engage in discovery as well as some motion practice prior to Plaintiff's return to the United States on June 22, 2010.  Moreover, the parties should be able to comply with the July 2, 2010 discovery deadline by scheduling Plaintiff's in-person deposition after he returns to the United States on or about June 22, 2010.

Of course, Defendants could expedite the litigation by agreeing to depose Plaintiff by teleconference or by written questions.  Construing the SCRA liberally in favor of the Plaintiff as a servicemember serving in an active combat role in a foreign country, the Court concludes that the Motion for a Stay is well taken and should be granted.

IT IS ORDERED that Plaintiff's Motion for Stay Pursuant to the Servicemembers Civil Relief Act (Doc. No. 30) is granted in that the in-person deposition of Plaintiff as well as any personal appearance by the Plaintiff in this lawsuit are stayed until June 22, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE